Dear Robinson,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Does the definition of "injurious substance" as used in 47O.S. 11-1110(c) (1999) include hazardous materials or dangerousmaterials?
2. Is the party who removes wrecked vehicles and injurioussubstances from the roadway, pursuant to 47 O.S. 11-1110(c)(1999), also required to clean up hazardous materials ordangerous materials deposited on the roadway?
 I.
¶ 1 You first ask whether an "injurious substance" under paragraph (c) of 47 O.S. 11-1110 (1999) includes hazardous or dangerous materials. No case law in Oklahoma supplies an answer to this specific question. Section 47 O.S. 11-1110 is part of the Oklahoma Highway Safety Code ("Code"). That section of the Code addresses the dropping of injurious substances on highways or roadways and the responsibility for their removal in the aftermath of a vehicle accident. Reviewing the section in its entirety is helpful in deducing whether "injurious substance" includes hazardous materials or dangerous materials:
 "(a) No person shall throw or deposit upon any highway any glass bottle, glass, nails, tacks, wire, cans or any other substances likely to injure any person, animal or vehicle upon such highway.
 "(b) Any person who drops, or permits to be dropped or thrown, upon any highway any destructive or injurious material shall immediately remove the same or cause it to be removed.
 "(c) Any person removing a wrecked or damaged vehicle from a highway, highway right-of-way or any other location as the result of an accident shall remove any glass or other injurious substance dropped upon the highway or highway right-of-way or other location from such vehicle. The owner or insurer of the owner of the vehicle shall be responsible for the cost of removal of the glass or other injurious substance."
See 47 O.S. 11-1110 (1999).
¶ 2 Reading paragraphs (a), (b) and (c) of Section 11-1110 together indicates that "substances likely to injure any person, animal or vehicle" is apparently used synonymously with "destructive or injurious material" and "injurious substance."Id. The latter phrases clearly refer back to items or substances such as "glass bottles, glass, nails, tacks, wire, or cans." Id. 47 O.S. 11-1110(a). Utilizing the rule of ejusdem generis, the meaning of more general words in a statute will be construed restrictively by the more specific words in the statute, to include things of the same kind, class and character.[1] Thus, an "injurious substance" includes anything which poses a danger of physical injury to vehicles, persons or animals in the specific context of roadway safety. Injurious substances might include any item or substance which could puncture vehicle tires, or any obstruction such as spilled cargo or debris from a collision which may impair the movement of other vehicles, persons or animals resulting in injury to them.
¶ 3 Next, it is necessary to refer to statutes defining "hazardous materials" and "dangerous materials." Oklahoma regulates the transportation of hazardous material, in part, under the Oklahoma Motor Carrier Safety and Hazardous Materials Transportation Act ("Act"). See 47 O.S. 230.1-47 O.S.230.16 (1991-1999). In defining "hazardous material" for purposes of the Act, Oklahoma has adopted the federal definition of "hazardous materials." See 47 O.S. 230.3(5) (1991). Under federal regulation and Oklahoma statute, "hazardous materials" are substances which are explosive, flammable, poisonous, corrosive, radioactive, etc. See 49 C.F.R. 172.101 (1992). Under the Oklahoma Emergency Response Act (27A O.S. 4-1-101-27AO.S. 4-1-106 (1999)) "`dangerous substance' means explosives, gases, flammable liquids and solids, poisons, radioactive materials, hazardous materials, deleterious substances, oil, or other substance or material in a quantity or form capable of posing an unreasonable risk to public health and safety, property or to the environment." Id. 27A O.S. 4-1-102(4).
¶ 4 In comparing the phrases "injurious substance" and "hazardous" or "dangerous materials" in the context of the statutes which mention these terms, we conclude they are dissimilar. Hazardous and dangerous materials pose a significantly greater risk to general public health and safety than the potential harm accident debris on the highway poses to persons, vehicles and animals (injurious substances). In addition, the statutory scheme for handling hazardous and dangerous materials effectively excludes wreckers as entities who may remove such materials from the roadways.[2] Therefore, "injurious substance" as referenced in 47 O.S. 11-1110, does not include hazardous or dangerous materials.
 II.
¶ 5 You next ask whether the one who removes wrecked or damaged vehicles and injurious substances from a highway after an accident is also required to remove any hazardous or dangerous material. According to information you provided, in some instances wreckers have contacted remediation services to clean up accident sites and afterwards disputes have arisen about who is responsible to pay for the cleanup. In 1999, the Legislature amended Section 47 O.S. 11-1110(c) in an effort to clarify who would be financially responsible for the cleanup of injurious substances after a highway accident:
 "Any person removing a wrecked or damaged vehicle from a highway, highway right-of-way or any other location as the result of an accident shall remove any glass or other injurious substance dropped upon the highway or highway right-of-way or other location from such vehicle. The owner or insurer of the owner of the vehicle shall be responsible for the cost of removal of the glass or other injurious substance."
Id. (emphasis added) (Emphasis indicates amended portions of the law).
¶ 6 The statute is clear that the person removing wrecked or damaged vehicles from the highway — the wrecker — "shall" also remove any glass or other injurious substances. In addition, the statute expressly assigns financial liability for the removal of glass or other injurious substances to the vehicle owner or insurer. We have already concluded that "injurious substances" do not include hazardous or dangerous materials; thus, wreckers are not required to clean up hazardous or dangerous materials.
¶ 7 There is additional legal support for the conclusion that wreckers are not required to clean up hazardous or dangerous materials. Under federal regulations, any carrier of hazardous materials must maintain emergency response information about specific hazardous material cargo, and have access to a 24-hour emergency response number with persons knowledgeable in emergency response to hazardous materials incidents. See49 C.F.R. 172.602(a) (1997); 172.604(a) (1996). Federal regulations also require hazardous materials carriers to train their drivers to contact the carrier in the event of a hazardous materials incident. See 49 C.F.R. 172.606(a) (1998).
¶ 8 The Oklahoma Emergency Response Act dovetails with these federal regulations. At the scene of a highway accident involving dangerous materials a "lead official"[3] takes charge of the on-site management of the emergency. See 27A O.S.4-1-103(D) (1999). If there is a significant threat to public health, safety or the environment, the statute mandates a contact with the Oklahoma Department of Environmental Quality (DEQ). See27A O.S. 4-1-103(E) (1999). The statutory duties of DEQ include notifying the responsible party of the release and overseeing the planning on final containment, cleanup and recovery of dangerous material. See 27A O.S. 4-1103(F)(5)/27A O.S. 4-1103(F)(6). If necessary, DEQ is statutorily empowered to initiate cleanup operations by authorization of the responsible party or impliedly, by the party's lack of responsiveness. See 27A O.S.4-1-103(G) (1999). Under Oklahoma law, the responsible party "shall be liable for any expenses incurred in any cleanup operation." Id.
¶ 9 The underlying policies in federal regulations and the Oklahoma Emergency Response Act show that wreckers are not required to clean up hazardous or dangerous materials. Under the Oklahoma law governing the emergency response and cleanup of hazardous or dangerous materials, persons with special emergency response skills shall oversee or manage the cleanup of such material. See 27A O.S. 4-1-103 (1999); 29 C.F.R. 1910.120(e) (1996). In contrast, the simple task of a wrecker or towing service is to clean up after an accident to ensure highway safety. Federal regulations require the carrier or the responsible party to have an emergency response contingency plan in place. See 49 C.F.R. 172.604 (1996). The carrier is first to be given an opportunity to arrange for the cleanup of hazardous materials prior to DEQ initiating the remediation. See 27A O.S.4-1-103 (1999). In contrast, injurious substances are to be cleaned up by whatever wrecker service the lead law enforcement official has called. Thus, where hazardous or dangerous materials are involved in an accident scene, it is not the obligation of the wrecker who removes vehicles to also remove the hazardous or dangerous materials.
¶ 10 It is, therefore, the official Opinion of the AttorneyGeneral that:
1. Under 47 O.S. 11-1110(c) (1999) an "injurious substance"does not include "hazardous materials" or "dangerous materials"as defined by 49 C.F.R 172.101 (1992), and 27A O.S.4-1-101-27A O.S. 4-1-106 (1999), respectively."Injurious substance" means items or substances such as glass,tacks, nails, spilled cargo, or other debris on a highwayresulting from an accident which could cause physical injury topersons, vehicles or animals on the roadway.
2. Under 47 O.S. 11-1110(c) (1999), the one who removeswrecked or damaged vehicles and injurious substances from aroadway after an accident is not required to also removehazardous or dangerous materials. In accident scenes whichinvolve hazardous materials or dangerous materials, the OklahomaEmergency Response Act (27A O.S. 4-1-101-27A O.S. 4-1-106(1999)) governs who will remove those materials from the area.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
ALICIA CONNOLLY-LOHR ASSISTANT ATTORNEY GENERAL
[1] See State ex rel. Commissioners of the Land Office v. Butler, 753 P.2d 1334, 1338-39 (Okla. 1987) (applying ejusdem generis, Court held that "oil, gas and other minerals" included minerals produced as a component or constituent of oil or gas, but not coal); Magnolia Petroleum Co. v. Oklahoma Tax Comm'n,326 P.2d 821, 825 (Okla. 1958) (in tax statute regarding sale of property "to a partner or other person" the court held "other person" was to be construed as a person whose relationship to vendor is in nature of a partner such as joint adventurer or co-adventurer).
[2] Contractors who respond to hazardous materials incidents and conduct cleanup services must comply with the training requirements set out in federal regulations. See29 C.F.R. 1910.120(e) (1996).
[3] "Lead official" is the person designated by the contact agency to be the official in charge of the on-site management of the emergency. See 27A O.S. 4-1-1102(2) (1999). The "contact agency" is the municipality, fire department or the Oklahoma Highway Patrol as determined by the location of the incident (e.g., for incidents inside corporate municipal limits, the contact agency is the Municipal Fire Department). See id. 27AO.S. 4-1-102(9).